IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEONARD G. YOUNG, JR., | ) |
| | ) Civil Action No.  10-284 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Cynthia Reed Eddy |
| | ) |
| JEFFREY BEARD; *ET AL.*, | ) |
| Defendants. | ) |
| | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff, Leonard G. Young, Jr., a prisoner presently incarcerated at the State Correctional Institution at Smithfield, commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983.  Plaintiff claims that the Defendants violated his rights as protected by the First, Eighth and Fourteenth Amendments of the United States Constitution while he was confined in the Restricted Housing Unit (RHU) at the State Correctional Institution at Greene. The remaining Defendants in this action include the following individuals:   Deputy Superintendent Jeffrey Martin; Superintendent Louis Folino; Major Lorinda Winfield; Captain Anthony Gumberevic; and Correctional Officer Moody.

### A. Standard of Review

Presently pending is Plaintiff's Motion for Summary Judgment (ECF No. 59).  Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to

---

[1] The parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter.  [ECF Nos. 70, 71, 72].

judgment as a matter of law. Fed. Rule Civ. Proc. 56(c). The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth ". . . specific facts showing that there is a genuine issue for trial . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry, then, involves determining " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting Anderson, 477 U.S. at 251-52).

## A. Plaintiff's Allegations and Facts of Record

On August 17, 2010, Plaintiff filed an Amended Complaint concerning events that occurred from September 20 through October 18, 2009 at the State Correctional Institution at Greene. Specifically, Plaintiff alleges that on September 20, 2009, his cell door was inadvertently opened after he repeatedly hit his call button. Instead of securing his cell door or waiting for staff to secure it, Plaintiff exited his cell and climbed onto the law library roof. After refusing several orders to come down, Plaintiff eventually complied and was restrained. A strip search was conducted and he was placed in a restraint chair. Plaintiff complains that he was kept in the restraint chair for an inappropriate period of time when he was not medically cleared for such a length of time.

On September 22, 2009, Plaintiff's door was again opened in error and he was instructed to secure his door. Before staff could secure his cell door, Plaintiff exited and proceeded to assault Sgt. Chapman. Plaintiff was placed back in his cell and thereafter, had to be extracted. He claims that he then was placed in a psychiatric evaluation cell for nine hours while he was naked and the air conditioning was turned up full blast. Defendants admit that the door was opened accidentally both times and that altercations took place afterward. Defendants deny any inappropriate treatment of Plaintiff in response to the altercations.

Plaintiff further alleges that, from September 20 through October 18, 2009, he was held in a cell with no clothing, cleaning supplies, personal hygiene supplies, and was denied showers, outside yard exercise, and his legal property. He claims that during this time, he was denied a blanket, a mattress, his cell lacked running water, and he experienced sensory perception deprivation due to Defendants shielding the cell door and keeping his cell in constant illumination. Plaintiff further alleges that he was denied twenty-one consecutive meals during this period and was not given medical attention. Plaintiff admits that food loaf was offered during this period, but claims a food allergy to food loaf.

Defendants admit that the lights were kept on in Plaintiff's cell and that his cell door was covered. Defendants further admit that Plaintiff was placed on some cell restrictions based on his behavior but deny that he was improperly or unlawfully denied clothing, cleaning supplies, medical treatment, showers, outside yard exercise, or a blanket. Defendants admit that Plaintiff was on food loaf restriction but deny that he was denied twenty-one meals. Defendants further deny that the water to Plaintiff's cell was improperly turned off.

3

Plaintiff also alleges that Defendants denied Plaintiff his legal work and use of the law library for more than 29 days. Defendants deny that legal work was improperly or unlawfully denied to Plaintiff and claim that all of his property was returned.

## C. Liability under 42 U.S.C. § 1983

Plaintiff seeks to assert liability against Defendants pursuant to 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42 (1988); Parratt v. Taylor, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986).

To establish personal liability against a defendant in a section 1983 action, that defendant must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. Rizzo v. Goode, 423 U.S. 362 (1976). Accordingly, individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. Rode, 845 F.2d at 1207.

The issues at bar concern whether Defendants have violated any of Plaintiff's constitutional rights. His claims are discussed seriatim below.

4

#### D. First Amendment

Plaintiff baldly alleges that Defendants violated his right of access to the courts by taking his legal property. In Christopher v. Harbury, 536 U.S. 403 (2002), the Supreme Court set forth specific criteria that a court must consider in determining whether a plaintiff has alleged a viable claim of right to access to the courts. Specifically, the Supreme Court held that, in order to state a claim for denial of access to courts, a party must identify all of the following in the complaint: 1) a non-frivolous, underlying claim: 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. Christopher, 536 U.S. at 415.

The Court explained that the first requirement mandated that the plaintiff specifically state in the complaint the underlying claim in accordance with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure to the same degree as if the underlying claim was being pursued independently. Christopher, 536 U.S. at 417. In this regard, the statement must be sufficiently specific to ensure that the district court can ascertain that the claim is not frivolous and that the "the 'arguable' nature of the underlying claim is more than hope." *Id.* The second requirement requires a Plaintiff to clearly allege in the Complaint the official acts that frustrated the underlying litigation. Third, a Plaintiff must specifically identify a remedy that may be awarded as recompense in a denial-of-access case that would not be available in any other future litigation. *Id.* at 414.

Here, Plaintiff has failed to identify any legal action he was unable to pursue as a result of Defendants' alleged actions. Moreover, Defendants state that all of his legal work was returned to Plaintiff as was all of his cell property. Thus, Plaintiff has failed to show that he is entitled to summary judgment as to his denial of access to courts claim.

## E. The Eighth Amendment

Plaintiff makes several allegations that invoke liability under the Eighth Amendment, which protects individuals against the infliction of "cruel and unusual punishments." This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

Notwithstanding, not every injury raises constitutional concerns. A prison official violates the Eighth Amendment only when two requirements are met. The inmate must show that: 1) he suffered a risk of "serious" harm; and 2) prison officials showed "deliberate indifference" to such risk. Farmer, 511 U.S. at 834. The first element is satisfied when the alleged "punishment" is "objectively sufficiently serious." *Id.* In determining whether a prisoner has alleged a risk that is objectively serious, a court must consider not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. Helling v. McKinney, 509 U.S. 25, 35 (1993).

The second criterion, deliberate indifference, requires an inmate to show that the prison official had a sufficiently culpable state of mind. The Supreme Court clarified this deliberate indifference standard in Farmer as follows.

> We reject petitioner's invitation to adopt an objective test for deliberate indifference. We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or

6

safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer, 511 U.S. at 837-838 (emphasis added).

Plaintiff alleges that the conditions of his confinement violated the Eighth Amendment prohibition against cruel and unusual punishment. Specifically, he claims that he was denied food, sanitation, clothing, exercise, and medical care. Further he claims that his placement in the restraint chair violated the Eighth Amendment as well as the constant illumination of his cell. Plaintiff's allegations alone, however, simply do not show that he suffered an Eighth Amendment violation. *See* Schaeffer v. Schamp, Civ. No. 06-1516, 2008 WL 2553474, at *6 (W. D. Pa. June 25, 2008) (holding that plaintiff's "claims that he was placed in a hard cell for ten days without a mattress, soap, toilet paper, running water, legal supplies, his prescription medication and only received one meal a day" were insufficient to constitute an Eighth Amendment violation); Williams v. Campbell, Civ. No. 07-885, 2008 WL 2816089, *4 (E. D. Pa. July 18, 2008); Fortune v. Basemore, Civ. No. 04-377, 2008 WL 4525373, 12 (W. D. Pa. Sept. 29, 2008) (denial of exercise and showers for fifteen days did not result in an Eighth Amendment violation); Allebach v. Sherrer, Civ. No. 04-287, 2005 WL 1793726 (D.N.J. July 27, 2005) (holding that denial of running water, religious items, visitation, recreation, use of the

7

telephone, mattress and clothing for thirty-six (36) days was not cruel and unusual punishment under the Eighth Amendment).[2]

Moreover, while Defendants admit that Plaintiff was placed on some cell restrictions based on his behavior, they specifically deny that the water to his cell was improperly turned off or that was improperly or unlawfully denied clothing, cleaning supplies, medical treatment, showers, outside yard exercise, or a blanket. Thus, Plaintiff has failed to show that he is entitled to summary judgment with regard to his cell amenity related conditions of confinement claims.

Defendants do admit that the lights were kept on in Plaintiff's cell and that his cell door was covered. While requiring inmates to live in constant illumination may, under certain circumstances, rise to the level of an Eighth Amendment violation, continuous exposure to low wattage night time security lighting may be permissible based on legitimate penological interests, such as prison security concerns. *See* Chavarria v. Stacks, 102 Fed. App'x 433, 436-37 (5th Cir. 2004). At night, RHU cells are lit by a fifteen (15) watt security light, which provides illumination to allow corrections officers to conduct security checks on prisoners. Brown v. Martinez, Civil No. 3:03-2392, 2007 WL 2225842, 8 (M.D. Pa. July 31, 2007). This wattage is consistent with American Correctional Association (ACA) standards and is insufficient for prisoners to read by without straining. *Id.* Thus, Plaintiff's mere allegations of constant lighting are insufficient to show that he is entitled to summary judgment as to this claim.

Plaintiff further claims that Defendants violated the Eighth Amendment through the use of the restraint chair. The Cruel and Unusual Punishments Clause of the Eighth Amendment

---

2. *Accord* O'Leary v. Iowa State Men's Reformatory, 79 F.3d 82, 83 (8th Cir. 1996) (inmate deprived of underwear, blankets, mattress, exercise, visits did not state an Eighth Amendment violation); Seltzer-Bey v. Delo, 66 F.3d 961, 963 (8th Cir.1995) (inmate placed in strip cell without clothing, bedding, or running water, with a concrete floor, a concrete slab for a bed, and cold air blowing on him did not state an Eighth Amendment violation).

8

protects inmates against the application of excessive force by correctional officers. *See* Whitley v. Albers, 475 U.S. 312, 318-19 (1986). What is required to prove an Eighth Amendment violation "varies according to the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5 (1992). In an excessive force claim, the core judicial inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Factors relevant to this inquiry include: the need for application of force; the relationship between that need and the amount of force used; the threat reasonably perceived by the responsible officials; and any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7 (citations omitted). The absence of serious injury is a relevant, but not dispositive, additional factor to be considered in the subjective analysis. *Id.*

In reviewing excessive force cases in the prison context, the Supreme Court has instructed as follows.

When the ever-present potential for violent confrontation and conflagration, ripens into actual unrest and conflict, the admonition that a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators, carries special weight. Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. That deference extends to a prison security measure taken in response to an actual confrontation with riotous inmates, just as it does to prophylactic or preventive measures intended to reduce the incidence of these or any other breaches of prison discipline. It does not insulate from review actions taken in bad faith and for no legitimate purpose, but it requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice. Accordingly, in ruling on a motion for a directed verdict in a case such as this, courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.

9

Whitley v. Albers, 475 U.S. 312, 321-322 (1986) (internal quotations omitted).

As an initial matter, the Court notes that the use of a restraint chair, in and of itself, does not violate the Eighth Amendment. *See, e.g.*, Fuentes v. Wagner 206 F.3d 335, 345 (3d Cir. 2000) (defendants entitled to summary judgment with regard to use of restraint chair where there was no evidence that prison officials placed him in the chair maliciously and sadistically to cause harm); Dixon v. Toole, 225 F. App'x 797, 799 (11th Cir. 2007) (no Eighth Amendment violation with respect to four point restraints where prisoner suffered no physical injury).

Here, Defendants used the restraint chair only after Plaintiff repeatedly refused to obey orders after escaping from his cell when his door was inadvertently opened. While Defendants admit that Plaintiff was put in a restraint chair beyond eight hours, they deny that it was done inappropriately or for an inappropriate period of time. Moreover, Defendants deny that Plaintiff was naked, that he was not allowed exercise and that he was denied medical care.

The circumstances of this case do not clearly show that the force applied was excessive so as to present a cognizable Eighth Amendment claim. Plaintiff's actions in repeatedly creating the confrontations justified some use of force. The force was applied for reasonably short periods necessary to subdue Plaintiff, and Plaintiff did not sustain any significant injuries.

As instructed by the United States Supreme Court, "[u]nless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury." Whitley v. Albers, 475 U.S. 312, 321-322 (1986). The Eighth Amendment does not protect an inmate against an objectively *de minimis* use of force. Smith v. Mensinger, 293 F.3d 641, 649 (3d Cir. 2002). As recognized by the Court of Appeals for the Third Circuit "[t]here exists some point at which the degree of force used is so minor that a court can safely assume that no

10

reasonable person could conclude that a corrections officer acted maliciously and sadistically." Reyes v. Chinnici 54 Fed. Appx. 44, 48-49, 2002 WL 31546515, 4 (3d. Cir. Nov. 18, 2002) (holding force was *de minimis* where corrections officer punched inmate in the shoulder to avoid being spit on). *Accord* Thomas v. Ferguson, 361 F.Supp .2d 435, 439-41 (D.N.J. 2004) (finding that, "[e]ven if proven to be true and for no necessary purpose, Defendants' alleged conduct ... does not meet the Constitutional standard for a claim of a malicious and sadistic use of force 'repugnant to the conscience of mankind,' " where inmate alleged he was punched and shoved by corrections officers); Wilson v. Reinhart, 2003 WL 21756393 (D. Del. Jul.29, 2003) (same where officer sprayed inmate in the face with mace). *See, e.g.*, Trammel v. Keane, 338 F.3d 155 (2d Cir. 2003) (holding that defendants did not disregard substantial risk to inmate's safety by placing him on behavior action plan that "while indeed onerous, even harsh, was reasonably calculated to correct [the inmate's] outrageous behavior."); Key v. McKinney, 176 F.3d 1083 (8th Cir. 1999) (holding that inmate who was restrained in handcuffs and leg shackles did not suffer a serious deprivation of the minimal civilized measure of life's necessities, as required for Eighth Amendment claim, where, although shackles made it more difficult for inmate to sleep and relief himself, he was not deprived of bedding, food, or bathroom facilities, and he was checked on by a nurse and guard at regular intervals); Hartsfield v. Vidor, 199 F.3d 305 (6th Cir. 1999) (finding no Eighth Amendment violation where prisoner was punished for damaging his cell by being kept in restraints for two eight-hour periods where he was denied fresh water and use of the toilet); LeMaire v. Maass, 12 F.3d 1444, 1460 (9th Cir. 1993) (holding that use of full in-cell restraints, which make it difficult to sleep, eat, drink water, or stay warm, under existing regulations to maintain security and safety do not reflect "deliberate indifference" or malice and sadism); Bruscino v. Carlson, 854 F.2d 162 (7th Cir. 1988) (upholding handcuffing, shackling,

11

boxing of the handcuffs, spread-eagling, and rectal searches as reasonable measures in view of the history of violence at the prison and the incorrigible, undeterrable character of the inmates), *cert. denied*, 491 U.S. 907 (1989); Williams v. Burton, 943 F.2d 1572 (11th Cir. 1991) (holding that placing a disruptive inmate in four-point restraints with adhesive tape covering his mouth was both prudent and proper and did not violate the Constitution), *cert. denied*, 505 U.S. 1208 (1992); Jiles v. Breen-Smith, Civ. No. 08-464, 2009 WL 4827065, 7 (W. D. Wis. Dec. 8, 2009) (specifically holding that this particular plaintiff in this particular case has no Eighth Amendment claim because he has not shown that defendants disregarded a substantial risk of serious harm to him); Jarrett v. Bouchard, Civ. No. 05-195, 2006 WL 2632460 (W. D. Mich. Sept.13, 2006) (finding no Eighth Amendment violation where plaintiff was restrained and his jaw was injured as a result of the restraint after he attempted to spit on defendants as they were removing him from the shower stall because there was no evidence that the officer did so intentionally). *Accord* McDowell v. Sherrer, 2008 WL 4542475, 1 (D.N.J. Oct. 7, 2008) (granting summary judgment to prison guards with respect to cell extraction based on videotape evidence). Consequently, Plaintiff has failed to show that he is entitled to summary judgment as to this claim.

Plaintiff also asserts an Eighth Amendment claim alleging failure to provide medical treatment. To state an Eighth Amendment violation in the context of medical treatment, an inmate must show prove two elements: 1) plaintiff was suffering from a "serious medical need," and 2) prison officials were deliberately indifferent to the serious medical need. Gamble v. Estelle, 439 U.S. 897 (1978).

The first showing requires the court to objectively determine whether the medical need was "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a

12

physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988). The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993).

A plaintiff alleging constitutionally inadequate medical treatment must submit medical evidence of a "serious medical need" sufficient to satisfy the objective component of the test. Boring v. Kozakiewicz, 833 F.2d 468 (3d Cir. 1987), *cert. denied*, 485 U.S. 991 (1988). In Boring, the Court of Appeals for the Third Circuit determined that, because plaintiffs failed to produce expert testimony that their injuries were "serious," they failed to meet their burden of proof. The court explained that expert testimony would not necessarily be required in situations where the seriousness of injury or illness would be apparent to a lay person, *e.g.*, a gunshot wound. Boring, 833 F. 2d at 473 (citing City of Revere v. Massachusetts General Hosp., 463 U.S. 239 (1983)). With respect to an ulnar nerve injury and migraine headaches, however, the Court concluded that a fact finder would not be able to determine that the condition was "serious" because the need for treatment did not appear to be "acute." *Id.* With respect to a scalp condition and complaints about dental care, the Court found that the complaints merely reflected a disagreement over the proper method of treatment. In so concluding, the Court noted that "courts will not 'second-guess the propriety or adequacy of a particular course of treatment

13

[which] remains a question of sound professional judgment.'" *Id.* (quoting Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979)). Finally, with respect to a prior knee injury, the Court found that the evidence did not establish an acute condition.

Here, Plaintiff has not included any evidence to whatsoever to substantiate the existence of any serious medical need. Moreover, as with the medical complaints in Boring, a lay person would not be able to conclude that Plaintiff's unsubstantiated allegations constituted a "serious medical need" sufficient to invoke the Gamble standard without expert testimony or evidence. Thus, Plaintiff has failed to meet his burden of demonstrating that Defendants ignored a critical or escalating medical situation and that their actions posed a substantial risk of serious harm. Because evidence of this nature is required in order for an inmate's claim to succeed, Plaintiff's failure to meet this burden is fatal to his case. *Accord* Banks v. Beard, Civ. No. 03-659, 2006 WL 2192015, 13 (W. D. Pa. Aug. 1, 2006) (holding that injuries such as cuts, scrapes, scratches, bruises and a swollen black eye simply do not in themselves reflect trauma that necessarily calls for immediate medical treatment from a physician). Thus, Plaintiff has failed to show that he is entitled to summary judgment with respect to this claim. An appropriate order follows.

14

## ORDER

**AND NOW**, this 22nd day of May, 2012:

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment is

**DENIED**.

Cynthia Reed Eddy
United States Magistrate Judge

Leonard G. Young, Jr.
GN-9516
SCI Smithfield
1120 Pike Street
PO Box 999
Huntingdon, PA 16652