IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEONARD G. YOUNG, JR., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  10-0284 |
| | ) | United States Magistrate Judge |
| JEFFREY BEARD; *et al.*, | ) | Cynthia Reed Eddy |
| Defendants. | ) | |

## MEMORANDUM OPINION

### I.  Introduction

Plaintiff, Leonard G. Young, Jr., a prisoner of the Pennsylvania Department of Corrections ("DOC"), commenced this action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, against Defendants Louis Folino, Superintendent of the State Correctional Institution at Greene ("SCI-Greene"), Jeffrey Martin, Deputy Superintendent, Major Lorinda Winfield, Captain Anthony Gumbarevic,[1] and Correctional Officer Moody, all in their individual and official capacities.[2] Plaintiff claims Defendants violated rights guaranteed him by the First, Eighth and Fourteenth Amendments of the United States Constitution during a period from September 20, 2009 to October 18, 2009 in which he was confined in the Restricted Housing Unit (RHU) at SCI-Greene.

For the reasons to follow, after careful review of the pleadings, motions, responses, briefs in support and in opposition to summary judgment, and the video and documentary evidence submitted by the parties, including five DVD recordings of the incidents of September 20 and 21, 2009, Exhibits 1-5, Appendix to Defendants' Motion for Summary Judgment ("Defendants' Appendix") (ECF No. 85-1), the Court finds Defendants did not provide constitutionally

---

[1] Incorrectly spelled "Gumberevic" in the Amended Complaint.
[2] Secretary of the DOC, Jeffrey Beard, and others were initially named in the Complaint, but were subsequently dismissed from the case.

inadequate conditions of confinement, refuse to provide necessary medical treatment, use excessive force or subject Plaintiff to cruel and unusual punishment in subduing Plaintiff and confining him in a restraint chair for some fourteen hours, or in using various other restrictive measures during the period in question. Summary judgment will be granted, therefore, in favor of Defendants. [3]

## II. Factual Averments and Procedural History

### A. The Amended Complaint (ECF No. 35)

On August 17, 2010, Plaintiff filed a handwritten Amended Complaint (ECF No. 35) concerning events from September 20 through October 18, 2009 at SCI-Greene. The Amended Complaint sets forth the following averments, verbatim, against all defendants because they either participated directly or refused to stop the alleged unconstitutional conduct:

> 1. To be held in a cell without no running water, mattress, clothing, hygiene products and only a suicide smock and blanket for 30 days 10 w/o a blanket. 2. United States mail held and destroyed for 30 days. 3. Denied law library and exercise outside of cell. 4. Held in a restraint chair for 14 hours being denied exercise and medical treatment for 9 hours while naked in a psychiatric cell with the air conditioning on full blast. 5. Denied showers and proper cell cleaning materials for 39 days. 6. Sensory deprivation by covering my cell windows with wool blanket and a mobile shield so I can't see out and no one can see in while housing lights were kept on for 30 days. 7. Destruction of / and withholding of legal work hindering Due process and access to the courts. 8. Denial of meals and medical attention when i missed 21 meals in a row and had to drink toilet water to stay alive. 9. CO#1

---

[3]   Under the Federal Magistrate Judges Act, a Magistrate Judge's jurisdiction over a civil action may be conferred by consent of the parties. 28 U.S.C. § 636(c)(1) (upon consent, "a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case"). Consent of all parties gives the Magistrate Judge full "authority over dispositive motions, conduct of trial, and entry of final judgment, all without district court review." *Roell v. Withrow*, 538 U.S. 580, 585 (2003); *In re Search of Scranton Hous. Auth.,* 487 F.Supp.2d 530, 535 (M.D.Pa. 2007). Plaintiff and Defendant have each filed an election form stating that the party "voluntarily consents to have a United States Magistrate Judge conduct any and all further proceedings in the case, including trial and entry of a final judgment, with direct review by the United States Court of Appeals for the Third Circuit if an appeal is filed." (ECF Nos. 70, 71).

> Moody opened my cell door after threats of harm. 10. CO#1 Moody yanked handcuffed hands through the cell door tray slot causing sever[e] pain. 11. On September 29, 2009 PRC (Major Winfield, Deputy Jeffrey Martin) denied me medical care for not eating for more than 17 meals after I told him that I haven't ate in all most 6 days. They refused to call medical.

Amended Complaint, (ECF No. 35, at 3 of 7), at ¶¶ 1-11.

Plaintiff claims the foregoing conduct subjected him to deliberate indifference to medical and physical needs, was cruel and unusual punishment, denied him due process and access to the courts, and deprived him of various rights protected by the First, Eighth, and Fourteenth Amendments to the United States Constitution. *Id*. at ¶ 8. Plaintiff further alleges that he unsuccessfully followed the requisite grievance procedure.

### B.  Voluntary Dismissal and Reinstatement of Complaint

Plaintiff filed a motion for voluntary dismissal of his Amended Complaint, pursuant to Fed.R.Civ.P. 41(a)(1) (ECF No. 46), which United States District Judge Nora Barry Fischer granted on December 6, 2010. (ECF No. 47). As provided in Rule 41, the dismissal was without prejudice. Fed.R.Civ.P. 41(a)(1)(B); *In re Bath and Kitchen Fixtures Antitrust Litig.*, 535 F.3d 161, 165 (3d Cir. 2008) (with one exception not applicable here, a timely notice of voluntary dismissal is without prejudice). By Text Order of September 6, 2011, the Court granted Plaintiff's Motion for Leave to Reopen (ECF No. 48). Defendants thereafter filed an Answer to the Amended Complaint (ECF No. 51) in which, hamstrung by the generality and lack of specificity in Plaintiff's Amended Complaint, *id*. at 2 of 6, they denied its averments somewhat generally, stating:

> Consequently, and for the sake of judicial economy, only responses of a more general nature are provided herein. Defendants submit that this is permissible pursuant to Rule 8 of the Federal Rules of Civil Procedure.

Accordingly, the Defendants generally deny that they violated any of Plaintiff's legal rights, whether under federal or state statutory or constitutional law. They deny that they violated Plaintiff's First, Eighth and/or Fourteenth Amendment rights in any manner whatsoever. They more specifically deny: that they denied Plaintiff humane conditions of confinement; that they interfered with his First Amendment rights with regard to their treatment of his legal and/or regular mail; that they denied him adequate medical treatment; that they subjected him to unlawful retaliation; or that they used excessive force upon him.

Defendants' Answer to Amended Complaint, (ECF No. 51) at 3 of 6.

### C. Plaintiff's Motion for Summary Judgment

Plaintiff filed a Motion for Summary Judgment (ECF No. 59) on November 7, 2011. Having received consent to full and final jurisdiction by both sides, and following response and briefing, this Court entered a Memorandum Opinion and Order (ECF No. 73) on May 22, 2012 denying Plaintiff's motion. The discussion therein provides a convenient background for Defendants' pending Motion for Summary Judgment. Thus, the Memorandum Opinion and Order provides:

On August 17, 2010, Plaintiff filed an Amended Complaint concerning events that occurred from September 20 through October 18, 2009 at the State Correctional Institution at Greene. Specifically, Plaintiff alleges that on September 20, 2009, his cell door was inadvertently opened after he repeatedly hit his call button. Instead of securing his cell door or waiting for staff to secure it, Plaintiff exited his cell and climbed onto the law library roof. After refusing several orders to come down, Plaintiff eventually complied and was restrained. A strip search was conducted and he was placed in a restraint chair. Plaintiff complains that he was kept in the restraint chair for an inappropriate period of time when he was not medically cleared for such a length of time.

On September 22, 2009, Plaintiff's door was again opened in error and he was instructed to secure his door. Before staff could secure his cell door, Plaintiff exited and proceeded to assault Sgt. Chapman. Plaintiff was placed back in his cell and thereafter, had to be extracted. He claims that he then was placed in a psychiatric evaluation cell for nine hours while he was naked and the air conditioning was turned up full blast. Defendants admit that the door was opened accidentally both times and that altercations took place afterward.

4

Defendants deny any inappropriate treatment of Plaintiff in response to the altercations.

Plaintiff further alleges that, from September 20 through October 18, 2009, he was held in a cell with no clothing, cleaning supplies, personal hygiene supplies, and was denied showers, outside yard exercise, and his legal property. He claims that during this time, he was denied a blanket, a mattress, his cell lacked running water, and he experienced sensory perception deprivation due to Defendants shielding the cell door and keeping his cell in constant illumination. Plaintiff further alleges that he was denied twenty-one consecutive meals during this period and was not given medical attention. Plaintiff admits that food loaf was offered during this period, but claims a food allergy to food loaf.

Defendants admit that the lights were kept on in Plaintiff's cell and that his cell door was covered. Defendants further admit that Plaintiff was placed on some cell restrictions based on his behavior but deny that he was improperly or unlawfully denied clothing, cleaning supplies, medical treatment, showers, outside yard exercise, or a blanket. Defendants admit that Plaintiff was on food loaf restriction but deny that he was denied twenty-one meals. Defendants further deny that the water to Plaintiff's cell was improperly turned off.

Plaintiff also alleges that Defendants denied Plaintiff his legal work and use of the law library for more than 29 days. Defendants deny that legal work was improperly or unlawfully denied to Plaintiff and claim that all of his property was returned.

Memorandum Opinion and Order (ECF No. 73), at 2-4 of 15; *Young v. Beard*, 2012 WL 1865596, *1-*2 (W.D.Pa. 2012).

Based on the record before the Court at that time, the Court dismissed the First Amendment/ Right of Access to courts claim because Plaintiff failed to identify any underlying legal action he was unable to pursue as a result of Defendants' alleged actions. *See Christopher v. Harbury*, 536 U.S. 403, 414-15 (2002) (to state a claim for denial of access to courts, Plaintiff must identify (1) a non-frivolous, underlying claim; (2) the official acts frustrating the litigation; and (3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit).

Regarding his Eighth Amendment claims, the Court found Plaintiff failed to show he was entitled to summary judgment with regard to his cell amenity related conditions of confinement claims; that Defendants only used the restraint chair after Plaintiff repeatedly refused to obey orders after escaping from his cell when his door was inadvertently opened; that the circumstances presented showed Defendants acted in response to Plaintiff's actions in repeatedly creating confrontations and agitated situations; that force was applied only for reasonably short periods necessary to subdue Plaintiff and he did not sustain any significant injuries; and that Plaintiff did not clearly show that the force applied was excessive. *Young v. Beard*, 2012 WL 1865596 at*4-*6 (numerous citations omitted).

Finally, as to his claim of deliberate indifference to serious medical needs, this Court found that Plaintiff produced no expert testimony or other evidence "whatsoever to substantiate the existence of any serious medical need," or that Defendants "ignored a critical or escalating medical situation [such] that their actions posed a substantial risk of serious harm." *Id*. at *8.

### D.  Defendants' Motion for Summary Judgment (ECF No. 82)

Following denial of Plaintiff's Motion for Summary Judgment, the Court solicited *pro bono* counsel for Mr. Young, and on December 7, 2012, current counsel entered their appearances (ECF No. 80, 89) and offered their able services to assist him in preparation of his response to Defendants' Motion for Summary Judgment (ECF No. 82) which was filed on January 14, 2013.

The Court denied Plaintiff's request for a court appointed expert in the field of forensic psychiatry and psychiatry within correctional institutions, Order of May 8, 2013 (ECF No. 100), and later denied Plaintiff's request to stay the proceedings until such time as the United States Department of Justice investigation completed its investigation of the Pennsylvania State

Correctional Institutions' use of solitary confinement on prisoners with mental illness and issued its final report.  Order of Court of June 11, 2013 (ECF No. 113) ("The Department of Justice Report . . . has no probative value to the sole remaining claim in this case, namely that a particular fourteen hour restraint in a restrictive movement chair on a particular day of his confinement at SCI-Greene amounted to excessive force prohibited by the Eighth Amendment.").

Thereafter, summary judgment briefing was completed and Defendants' motion is now ready for disposition. Unless otherwise indicated, the following historical facts are not disputed, although competing inferences arising therefrom and conclusions drawn by the parties are widely at odds.

Context is everything. In assessing the conduct and states of mind of Defendants in September and October of 2009, it is important to know what Corrections Officers and Officials at SCI-Greene knew about Mr. Young and his incarceration history. Although Plaintiff maintains that his history with the DOC is irrelevant and immaterial, he does not dispute Defendants' assertion that "Leonard G. Young, Jr. is one of the most dangerous inmates in the Pennsylvania Department of Corrections," that between March 20, 2006 and October 18, 2009 Mr. Young had "accumulated 100 misconducts, with approximately 21 for assaults, including with weapons," and 233 misconducts as of December 10, 2012. Defendants' Concise Statement of Undisputed Material Facts ("DCS") (ECF No. 84), at ¶¶1-2. Plaintiff has Disciplinary Custody incarceration time until 2045, and he has been a fixture in RHU since March 3, 2007. *Id*. at ¶3. Mr. Young's violent history includes assaulting a Corrections Officer at SCI-Forest. *Id*. at ¶5.

In light of his penchant for mayhem, Mr. Young was single celled, placed on numerous security-related movement restrictions (e.g., handcuffed and shackled at all times when out of his

cell, such as for exercise or for medical treatment), and at times was required to wear a spit shield. *Id*. at ¶6. This remarkable history is relevant and material in assessing the objective basis for the conduct and subjective intent of Corrections Officers and Officials at SCI-Greene in September and October of 2009.

As two videos of the incident on September 20, 2009 and prison logs and reports demonstrate, around 20:06 hours a Corrections Officer accidently hit a button in the RHU Control Booth and unlatched Plaintiff's RHU cell door when another cell was supposed to be opened; Plaintiff immediately stepped outside of his cell, went back in to put his shoes on,  came back out of his cell and began moving around on the Pod. *Id*. at ¶¶7-8. Plaintiff ran up a stairwell to a balcony walkway, and climbed onto the mini-law library roof and sat underneath the window of B-Pod Control Center. *Id*. at ¶9. Although Plaintiff disputes the characterization, the video of this incident at Exhibit 2 supports Defendants' statement that "[w]hile on the roof, Inmate Young taunted Corrections Officers and was yelling to incite other inmates who began yelling, banging on doors and attempting to provoke Officers. This was a highly energized situation." *Id*.; Exhibit 2, DVD of hand-held camera footage, Defendants' Appendix (ECF No. 85-1). While not belligerent, Plaintiff did appear quite agitated and was very vocal, and inmates in surrounding cells were shouting and loudly talking to the guards and Plaintiff as the drama played out.

Although he initially refused directions to get down from the roof, after several minutes Plaintiff agreed and cooperated, to a point. After Corrections Officers hand cuffed and tethered him and began walking him to an area to be strip searched, Plaintiff went to his knees and would not walk further on his own power.  Thereafter, Plaintiff was carried down the steps by four Corrections Officers and through corridors until reaching the area where the strip search

(standard operating procedure when an inmate has left a cell and had opportunity to acquire items and objects) was to be conducted. After the strip search, Plaintiff was assessed by a Registered Nurse and photographs were taken; Plaintiff had no observable injuries, and this Court observed nothing on the DVD that might have caused any injuries.

Mid or upper level officers, including defendants Martin and Gumbarevic, authorized Plaintiff to be placed in a restraint chair, DCS (ECF No. 84), at ¶¶14-15, which Plaintiff audibly and somewhat jocularly referred to as "my buddy." Exhibit 2, DVD of hand-held camera footage, Defendants' Appendix (ECF No. 85-1). Plaintiff was lifted and placed into the restraint chair at approximately 21:38 hours, and wheeled in the chair to a psychiatric observation cell without incident.

While in the restraint chair and observation cell, Mr. Young was continually monitored and was medically assessed and his limbs exercised every two hours (except on one occasion when Plaintiff was asleep) by medical staff for one or two minutes each limb. During his approximately fourteen hours in the restraint chair (from 21:38 hours on September 20, 2009 to 10:30 hours on September 21, 2009), Plaintiff was not in any medical distress, his limbs were manipulated, his circulation was good in his fingers and toes, he declined the use of the urinal and water when offered, and he was talkative, joking with staff and exhibited no distress, pain or discomfort in the restraint chair. DCS (ECF No. 84), at ¶¶ 22-48.[4]  Plaintiff indicated to Nurse Perchinsky that there will be a "next time" for him in the chair, because "that's just how it is with me." *Id*. at ¶¶42-43.

---

[4]  According to Defendants, multiple video recordings were made of the exercise and feeding sessions during the fourteen hour period, but the recordings have been inadvertently misplaced or disposed. The account of Plaintiff's time in the restraint chair is taken from the testimony and reports of Corrections officers and officials. Plaintiff does not take issue with the missing video recordings.

Lt. Greco first went to the psychiatric cell to remove Plaintiff from the restraint chair, but he found inmate Young still agitated, verbally abusive and hostile toward staff, stating "Fuck you. I will stay in the chair. I will just act out when you let me out." *Id*. at ¶¶49-50. After consulting with Defendant Martin, the decision was made to leave Mr. Young in the chair. *Id*. at ¶ 51. Plaintiff does not contest these historical facts and accounts, but maintains that his agitation and aggressiveness are irrelevant and immaterial because "there was no proper basis for Plaintiff to be restrained in the Restraint Chair to begin with." Plaintiff's Response to DCS (ECF No. 105), at ¶¶ 49-51.

At around 10:30 hours the next day, September 21st, Plaintiff appeared to have calmed down and seemed ready to cooperate, and he was removed from the restraint chair. This activity was videotaped, and was uneventful. Plaintiff was transported to I-Unit Strip search area, and upon arrival of a Registered Nurse, he was removed from the restraint chair, photographed and examined, and was found to be under no signs of physical distress, although Plaintiff stated he was in significant discomfort and that his limbs were unsteady. Plaintiff also denied he had any injuries to report. Mr. Young was thereafter returned to his RHU cell without additional incident and filmed for several minutes following the return to his cell; he was given a security smock and blankets, but no mattress as he was under restriction because he had used his mattress in the past to block his windows.

The following day, September 22nd, at approximately 07:40 hours, a Corrections Officer accidently hit a button in the RHU Control Booth and unlatched Young's RHU cell door while a team of Corrections Officers had assembled outside an adjacent cell door, waiting to escort the inmate in that cell. Mr. Young immediately pushed his door completely open, left his cell and began to enter the Pod, and lunged for Corrections Officer Biagini who was standing at the

adjacent cell door. Plaintiff asserts that he fell out of his cell, and did not try or intend to leave his cell, nor did he lunge at Officer Biagini.  Whether lunging or falling, the record shows that a scuffle took place, which quickly ended with Plaintiff on the ground and the Corrections Officers controlling him, applying cuffs and a tether, lifting and returning him to his cell.

Once in his cell, Plaintiff refused to place his hands in the serving slot to allow the Corrections Officers to uncuff him. When Plaintiff continued to refuse to be uncuffed, a seven man extraction team (six Corrections Officers and one RN) was authorized and assembled. In the meantime, Plaintiff managed to break his tether. Lt. Grego sought authorization for the use of "OC spray," which was denied.  DCS (ECF No. 84), at ¶¶ 78-83. When the extraction team arrived at Young's cell, Young indicated that he would comply with Lt. Grego's orders. *Id*. at ¶ 84. Young was ordered to move his handcuffed arms from the front of his body to his back and place his handcuffs in the wicket for tethering, which he did. *Id*. at ¶¶ 85-86. A spit mask and shackles were applied for transport. *Id*. at ¶ 87. Once tethered, Plaintiff was removed from the cell. Young was given an order to stand up which he refused to obey and he was carried to the area to be strip searched.

Following the strip search, Young continued passive resistance and when he was brought to a standing position, his head struck the wall. *Id*. at ¶ 89. RN McAnany evaluated Young for injuries and took photographs, noting he observed no injuries. *Id*. at ¶ 90.  Young refused to walk so he was carried to the Restraint Chair and secured for transport to his cell, where his handcuffs were removed without incident. *Id*. at ¶ 91.

### III.    Standards for Motions for Summary Judgment

Federal Rule of Civil Procedure 56(a)  provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)).

A party claiming that a fact cannot be or is genuinely disputed must support that assertion either by:

> (A)     citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B)     showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).

Moreover, a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *UPMC Health Sys. v. Metropolitan Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir. 2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. *Williams v. Bor. of West Chester*, 891 F.2d 458, 460–461 (3d Cir. 1989) (non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).

The non-moving party cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument, but must "put up or shut up." *Berckeley Inv. Group., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (quoting *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109-10 (3d Cir. 1985)). Plaintiff must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex*, 477 U.S. at 322. *See also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The inquiry, then, involves determining "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting *Anderson*, 477 U.S. at 251-52). "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of N.Y. & N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (citing *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997)).

IV.     **Legal Discussion**

**A.  Use of Restraint Chair**

Although Plaintiff complains of his treatment and conditions throughout the September-October, 2009 period, his paramount claim is that Defendants violated his Eighth Amendment rights by subjecting him to a prolonged period of strict mechanical restraint in the restraint chair on September 20-21, 2009. Plaintiff summarizes his position in his Brief in Opposition to Defendants' Motion for Summary Judgment as follows:

> It should come as no surprise that housing a man in isolation for six years will render him unstable, particularly when that man had a history of mental illness dating back to his childhood, before his incarceration ever began. Corrections institutions house difficult inmates. Corrections institutions house inmates with complicated mental illnesses. A corrections official does not have *carte blanche* to retaliate against an inmate because he is known to be difficult. Further there is complete video evidence of the incident at issue. Plaintiff urges the Court to review the video at Defendant's Appx. 2 in its entirety, as it speaks for itself. Plaintiff had been secured, subdued for over fifteen (15) minutes before Captain Gumbarevic ordered the Restraint Chair. His order was purely punitive and in violation of the 8th Amendment and DOC policy. There is no justification for use of the restraint chair here at all, much less for 14 hours.

> The Eighth Amendment prohibits cruel and unusual punishment, and there is no constitutional justification for the retaliatory and prolonged use of physical restraints. Plaintiff Leonard G. Young, Jr. was restrained for 14 hours in a Restraint Chair, not because he posed an immediate threat of harm to himself, other inmates or corrections officers, but in retaliation for his reputation as a difficult inmate. The Department of Corrections created this situation, isolating Plaintiff from virtually all contact and stimuli for seven straight years of solitary confinement, and dramatically exacerbating Plaintiff's mental illness. As Plaintiff decompensated through prolonged isolation, he became less and less capable of conforming his conduct to the rules and expectations of the Department of Corrections, and thereby acting out and earning himself even more time in isolation. Defendants have taken advantage of, and retaliated against Plaintiff for, a situation they created. Their conduct is not constitutionally sanctioned, and should not be tolerated.

Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment (ECF No. 104), at 1-2.

Plaintiff may well be correct that isolation from contact with others and sensory stimuli for "seven straight years of solitary confinement . . . dramatically exacerbate[ed his] mental illness." Assuming this to be the case, however, the record before this Court, in light of well-established prisoner civil rights precedent under section 1983, shows that Defendants acted professionally and reasonably on September 20-21, 2009 in handling Plaintiff's out-of-cell experience, transporting and searching him, and placing him in the restraint chair for some fourteen hours until he had calmed sufficiently to allow him to be returned safely to his cell and uncuffed.

## B.  Eighth Amendment

The well-established Eighth Amendment precedent was succinctly summarized by United States District Judge Sylvia H. Rambo in *Zimmerman v. Schaffer*, 654 F.Supp.2d 226 (M.D.Pa. 2009):

> The Eighth Amendment prohibits cruel and unusual punishment, which includes the unnecessary and wanton infliction of pain by prison officials. U.S. Const. amend. VIII; *see also Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981); *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The Eighth Amendment both restrains prison officials from applying excessive force against inmates, *see Hudson v. McMillian*, 503 U.S. 1, 5 (1992), and it imposes affirmative duties on prison officials to provide humane conditions of confinement, *see Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). Here, Plaintiffs allege that Defendants have violated the Eighth Amendment both by applying excessive force and by failing to provide humane conditions of confinement. These two standards will be set forth in turn.

> 1.  Excessive Force

> The relevant inquiry in evaluating a claim of excessive force by prison guards is whether the force used was applied in good faith to maintain or restore discipline, or instead sadistically or maliciously to cause harm. *Hudson*, 503 U.S. at 6-7. The latter use of force violates the Eighth Amendment. *Id*. In *Whitley*, the Supreme Court set forth a number of factors that must be considered in evaluating the use of force by prison officials. *Whitley*, 475 U.S. at 319. These include the extent of any injury to the prisoner, as well as "the need for application of force, the relationship between

that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.*; *see also Hudson*, 503 U.S. at 8 . . . ; *Giles v. Kearney*, 571 F.3d 318, 328 ([3d Cir.] 2009); *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000). Deference is given to prison officials' adoption of policies to restore order and discipline. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

"Summary judgment in favor of a defendant is not appropriate 'if it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain.'" *Brooks v. Kyler*, 204 F.3d 102, 106 . . . , quoting *Whitley*, 475 U.S. at 322. Most recently in *Giles v. Kearney*, the Third Circuit reversed a district court grant of summary judgment on a prisoner's claim of excessive force where there was a genuine dispute of fact as to the necessity for the force, and a reasonable trier of fact could have concluded, based on the prisoner's testimony that he had been struck by prison guards even after he had ceased resisting, that the force used was excessive. 571 F.3d at 326-27.

2.  Conditions of confinement

Conditions of confinement constitute cruel and unusual punishment where those conditions result in a serious deprivation of "the minimal civilized measure of life's necessities" under contemporary standards of decency. *Rhodes*, 452 U.S. at 347. To prevail on a conditions of confinement claim, a plaintiff must show: (1) that the prison conditions pose a substantial risk of harm; and (2) that the prison official was deliberately indifferent to that risk. *Farmer* . . . , 511 U.S. 825, 834 . . .; *see also Griffin v. Vaughn*, 112 F.3d 703 (3d Cir. 1997); . . . . An officer who is deliberately indifferent must be both aware of the facts from which the inference of a substantial risk of serious harm could be drawn, and the officer must actually draw that inference. . . .

*Zimmerman*, 654 F.Supp.2d at 247-48 (parallel and certain other citations omitted).

## C. Mechanical Restraints

As District Judge Rambo also explained, often there is no clear demarcation between using force to subdue an inmate and the use of mechanical restraints, and parties may sometimes dispute whether the use of mechanical restraints falls into, and should be analyzed in the framework of, the category of conditions of confinement or of use of excessive force. *Id*. at 248. Where, as here, the mechanical restraint was used in a time and place somewhat removed from

the initial altercation/event precipitating its use, and pursuant to DOC policy, and was used in conjunction with an isolation cell in the psychiatric unit, this Court finds it most appropriate to analyze the Eighth Amendment claim as a conditions of confinement case. *See Hope v. Pelzer*, 536 U.S. 730 (2002) (analyzing case under conditions of confinement rubric, Court found inmate was subjected to cruel and unusual punishment in violation of the Eighth Amendment when prison guards handcuffed him to hitching post for disruptive behavior, despite his having already been subdued); *Mohamad v. Barone,* 494 Fed.App'x 212 (3d Cir. 2012) (analyzing use of restraint chair under conditions of confinement rubric); *Fuentes*, 206 F. 3d 335, 345 (analyzing use of restraint chair under conditions of confinement rubric); *Whaling v. Erie County Prison*, 2009 WL 5813857, *13 (W.D.Pa. 2009) ("Third Circuit has recognized that an inmate's claim concerning his time in restraints is to be analyzed as a conditions of confinement claim. *See Blakeney v. Dauphin County Prison*, 156 Fed.Appx. 520 (3d Cir. 2005); *Camp v. Brennan*, 54 Fed.Appx. 78 (3d Cir. 2002); *Fuentes* . . . .").

### D.  Application and Findings

Defendants acted professionally and within constitutional parameters in subduing and placing Plaintiff in  a restraint chair for about fourteen hours on September 20-21, 2009, and their treatment of Plaintiff did not constitute cruel and unusual punishment. Defendants' account of the incidents is fully supported by the video recorded on the DVDs before the Court, in addition to prison and medical staff logs and reports of relevant events.

As noted, Plaintiff's escape from his cell on September 20th was disruptive and induced agitation among other inmates on his Pod. Defendants managed to get Plaintiff and the situation under control using minimal force, only what was necessary to handcuff, tether, carry, strip

search and place Plaintiff in the restraint chair until he became less agitated and more cooperative.

Moreover, Defendants knew Plaintiff was violence-prone and had an extensive history of acting out, assaulting inmates and guards, and that he seemed determined to cause a ruckus and planned on being back in the chair again, knowing he was going to act out in the future. Plaintiff's history and violent tendencies supply the context and inform this Court's analysis. Indeed, Plaintiff acknowledges that his incarceration was marked by "periodic episodes of hallucinations, psychosis and lack of self-control, including throwing and smearing his own human waste," that he attempted to commit "suicide multiple times and in multiple correctional institutions, including attempting to hang himself and other attempts at self-harm while incarcerated at SCI-Greene," and that his "urges to self-harm have increased in frequency and severity the longer he has been housed in isolation." Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment (ECF No. 140), at 3 of 24.

From the record before the Court, Plaintiff suffered no actual harm nor any risk of "serious" harm, considering not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but any evidence that unwilling exposure to that risk violates contemporary standards of decency. Moreover, there is no evidence on the record to support Plaintiff's position that prison officials were motivated by a desire to inflict unnecessary and wanton pain; to the contrary, Defendants' response to Plaintiff's antics was measured and prudent, and did not exhibit malice, revenge or "deliberate indifference" to any risk of harm.

Gauging Defendants' conduct against the conduct of Corrections Officers and medical personnel in analogous cases, the use of the restraint chair and other restrictions on September 20-21, 2009 did not violate Plaintiff's Eighth Amendment rights. *See, e.g.*, *Mohamad, supra*

(prison officials' placement of inmate in restraint chair, naked, for 24 hours, did not constitute cruel and unusual punishment in violation of Eighth Amendment); *Fuentes, supra* (placement of inmate in restraint chair for eight hours did not violate substantive due process under Eighth Amendments standards, even if prison official overreacted in using the chair; officials did not act with "deliberate indifference" to inmate's health where evidence showed inmate was placed in restraint chair to "stop his disruptive behavior and maintain prison order and security"); *Iverson v. Leggett*, 2013 WL 3972621, *10 (W.D.Pa. 2013) (under circumstances, Corrections Officers did not Defendants violate inmate's Eighth Amendment rights by placing him in tight waist restraints and handcuffs for 48–50 hours, dressed in shorts and a t-shirt and boxers in a cold cell); *McCullon v. Brouse*, 2012 WL 4504504 (M.D.Pa. 2012) (collecting cases; following cell extraction, inmate remained in restraints for approximately 24 hours, in accordance with prison policy which directs that restraints should remain in place on the inmate until the prisoner regains his self-control); *Brown v. Beard*, 2011 WL 1085890, *15 (W.D.Pa. 2011) (collecting cases; no Eighth Amendment excessive force where inmate was placed in restraint chair for eight hours after extraction from his cell, use of a stun gun and chemical agent; "Prisons are hostile environments, the use of restraint chairs and the like may be the only way for prison officials to control prisoners such as Brown who simply will not abide by the prisons rules. As long as such measures are utilized in an humane manner, it is not for the federal courts to interfere in prison discipline."). *Cf. Zimmerman, supra* (summary judgment for defendants denied where restraint chairs and four-point bed-post restraint system designed by the Warden were often employed by Corrections Officers and Warden, for lengthy periods of time, against inmates who had caused minor property damage to their cells, even after inmates were subdued).

Even if analyzed under the excessive force rubric, as Plaintiff argues is the correct standard, Defendants' response to Plaintiff's behavior in September-October, 2009, conduct did not violate the Eighth Amendment. Five factors apply in determining whether a correctional officer used excessive force: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of the response." *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (internal quotation marks omitted) (quoting *Whitley*, 475 U.S. at 321). Consideration of these factors leads inevitably to the same result – Defendants did not use excessive force against Plaintiff.

(1) The need for application of some quantum of force to subdue and restrain an agitated and known-to-be violent inmate who had escaped his cell and initially refused to return, incited his fellow inmates while the drama continued, and who remained in a highly agitated state even after being subdued, cannot be reasonably disputed. (2) Only minimal force (i.e., the amount necessary to accomplish the penological purposes) was used. (3) There were no significant injuries, if any. (4) Plaintiff promised he would act out if released, and he posed a continued threat of agitating other inmates and hurting himself should he be released, throughout the fourteen hour period he was in the restraint chair. (5) Defendants refrained from OC spray, punching, kicking or otherwise manhandling Plaintiff as he was subdued and restrained.

Regarding condition of confinement claims in general, prison officials must not show deliberate indifference to a known substantial risk of serious harm to an inmate, and must ensure that inmates get enough food, clothing, shelter, and medical care, and they must take reasonable measures to assure inmates' safety. *Farmer*, 511 U.S. at 828, 832. The record demonstrates that

Plaintiff was not mistreated, and was offered adequate food, water and exercise during the September 20-October 18, 2009 period of restrictive confinement. During this period, there was no risk of any serious injury and Defendants did not exhibit deliberate indifference toward Mr. Young. The restrictions applied during this period were reasonably related to legitimate penological objectives, and did not create nor seem designed to cause risk of any serious harm. *See, e.g., Bell v. Wolfish*, 441 U.S. 520, 538-39 (1979); *Trammel v. Keane*, 338 F.3d 155 (2d Cir. 2003) (defendants did not disregard substantial risk to inmate's safety by placing him on behavior action plan that "while indeed onerous, even harsh, was reasonably calculated to correct [the inmate's] outrageous behavior."); *Key v. McKinney*, 176 F.3d 1083 (8th Cir. 1999) (inmate who was restrained in handcuffs and leg shackles did not suffer a serious deprivation of the minimal civilized measure of life's necessities, as required for Eighth Amendment claim, where, although shackles made it more difficult for inmate to sleep and relief himself, he was not deprived of bedding, food, or bathroom facilities, and he was checked on by a nurse and guard at regular intervals); *Hartsfield v. Vidor*, 199 F.3d 305 (6th Cir. 1999) (finding no Eighth Amendment violation where prisoner was punished for damaging his cell by being kept in restraints for two eight-hour periods where he was denied fresh water and use of the toilet); *LeMaire v. Maass*, 12 F.3d 1444, 1460 (9th Cir. 1993) (holding that use of full in-cell restraints, which make it difficult to sleep, eat, drink water, or stay warm, under existing regulations to maintain security and safety do not reflect "deliberate indifference" or malice and sadism).

Counsel for Plaintiff vigorously argues that the Court should also "consider Plaintiff's well-known and established mental illness, six-year solitary confinement, and the undeniable exacerbation of that mental illness and its symptoms as a result of Plaintiff's prolonged isolation. In short, this Court should consider how DOC officials, including Defendants, contributed

toward Plaintiff's disruptive conduct by mandating his segregation from human contact." Brief for Plaintiff (ECF No. 104), at 19. The Court is not unsympathetic to the effects of long term isolation on a prisoner's mental state, and this prisoner's in particular. However, that is not what this case is about.

Plaintiff filed his complaint concerning Defendants' actions over a defined and narrow period of time, and Defendants' Motion for Summary Judgment requires this Court to consider Plaintiff's behaviors in close temporal proximity to the incidents in September and October, 2009 and Defendants' responses and motivations for their responses (i.e., whether for punitive or for legitimate penological reasons).

### IV. Conclusion

For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment (ECF No. 82), and will grant judgment in their favor on all claims. A separate order will be entered.

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc:  all counsel of record